**UNITED STATES DISTRICT COURT**
**THE SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | |
|---|---|
| TYLER BAKER and BRIAN STANFIELD, on behalf of themselves and a class of all others similarly situated, <br><br>        Plaintiffs, <br><br> v. <br><br> THE PROCTER AND GAMBLE COMPANY, <br><br>        Defendant. | Civil Action No. 1:21-cv-734 <br><br> **COMPLAINT and** <br> **DEMAND FOR JURY TRIAL** |

Plaintiffs Tyler Baker and Brian Stanfield (collectively "Plaintiffs"), individually and on behalf of themselves and all others similarly situated, bring this class action lawsuit against Defendant The Procter and Gamble Company ("P&G" or "Defendant") based upon personal knowledge as to themselves, the investigation of their counsel, and on information and belief as to all other matters.

## INTRODUCTION

1.  This is a class action lawsuit against Defendant regarding the manufacture, distribution, and sale of its Old Spice, Secret, Sure and Tag spray-on antiperspirant and deodorant products that contain benzene, a known human carcinogen.[1]

2.  "Antiperspirant body spray products are considered over-the-counter drugs and certain deodorant body sprays are considered cosmetics that are regulated by the U.S. Food and Drug Administration ("FDA")."[2]  The FDA has several safety and effectiveness regulations in

---

[1] The products at issue include the following antiperspirant and deodorant sprays: Old Spice, Secret, Sure, and Tag (the "Affected Products").  Plaintiffs reserve the right to amend this list if further investigation and/or discovery reveals that the list should be amended.

[2] David Light, Kaury Kucera, PhD, and Quian Wu, PhD, *Valisure Citizen Petition on Benzene in Body Spray Products* (November 3, 2021), https://www.valisure.com/wp-content/uploads/Valisure-FDA-Citizen-Petition-on-Body-Spray-v4.0-1.pdf (last visited November 19, 2021); *See also* 21 C.F.R. § 350; 21 C.F.R. 362, *et seq.*

place that govern the manufacture and marketing of all antiperspirant and deodorant products, including safety data on its ingredients.[3]

3. On November 3, 2021, Valisure, an independent pharmacy that analyzes the safety of consumer products, filed a citizen petition with the FDA detailing its findings that it detected high levels of benzene in many body spray products, including several of Defendant's body spray products. Valisure called for the FDA to recall all batches of Defendant's body spray antiperspirant products that contained benzene on the basis that they are adulterated under Section 501 of the Federal Drug and Cosmetics Act ("FDCA") in violation of 21 U.S.C. § 351 and misbranded under Section 502 of the FDCA in violation of 21 U.S.C. § 352. Valisure also called for the FDA to recall all identified batches of deodorant body sprays containing benzene on the basis that, due to contamination with a known human carcinogen, the products are adulterated under Section 601 of the FDCA in violation of 21 U.S.C. § 361 and misbranded under Section 602 of the FDCA in violation of 21 U.S.C. § 362.

4. Benzene is a known human carcinogen. The World Health Organization ("WHO") and the International Agency for Research on Cancer ("IARC") have classified benzene as a Group 1 compound thereby defining it as "carcinogenic to humans."[4] Similarly, the Department of Health and Human Services ("DHHS") has determined that benzene causes cancer in humans.[5] Benzene exposure has been linked with acute lymphocytic leukemia, chronic lymphocytic leukemia, multiple myeloma, and non-Hodgkin lymphoma.[6]

---

[3] *FDA Authority Over Cosmetics: How Cosmetics Are Not FDA-Approved, but Are FDA-Regulated*, U.S. FOOD & DRUG ADMINISTRATION, https://www.fda.gov/cosmetics/cosmetics-laws-regulations/fda-authority-over-cosmetics-how-cosmetics-are-not-fda-approved-are-fda-regulated (last visited November 19, 2021).

[4] *IARC Monographs on the Identification of Carcinogenic Hazards to Humans: List of Classifications*, INTERNATIONAL AGENCY FOR RESEARCH ON CANCER, WORLD HEALTH ORGANIZATION, https://monographs.iarc.who.int/list-of-classifications (last visited November 19, 2021).

[5] *Facts About Benzene,* CENTERS FOR DISEASE CONTROL AND PREVENTION (April 4, 2018) https://emergency.cdc.gov/agent/benzene/basics/facts.asp (last visited November 19, 2021).

[6] *Benzene and Cancer Ris*k, AMERICAN CANCER SOCIETY https://www.cancer.org/cancer/cancer-causes/benzene.html (last visited November 19, 2021).

5. According to Valisure, because many of the products it tested did not contain detectable levels of benzene, it appears that benzene is not a requisite component of manufacturing or packaging body sprays.[7] As such, "any significant detection of benzene should be deemed unacceptable."[8]

6. David Light, Founder and CEO of Valisure stated that "[t]he presence of this known human carcinogen in body spray products regularly used by adults and adolescents in large volumes makes this finding especially troubling[.]"[9]

7. The presence of benzene in the Affected Products is not disclosed on the Affected Products' labels. In fact, P&G states on its website that it does not use benzene in its products.[10] Therefore, Plaintiffs, by use of reasonable care, could not have discovered that the Affected Products were contaminated with benzene.

8. Plaintiffs and Class members purchased the Affected Products with the expectation that the products were safe, including free of carcinogens. Because Defendant sold products to consumers that contain dangerous levels of benzene, Plaintiffs and the Classes were deprived of the benefit of their bargain.

9. In order to prevent Defendant from selling misbranded, illegal, and dangerous products in the future, Plaintiffs seek injunctive relief including, but not limited to requiring Defendant to improve internal testing protocols and also requiring independent testing of its products to ensure that its body spray products are free of benzene before they are sold.

---

[7] David Light, Kaury Kucera, PhD, and Quian Wu, PhD, *Valisure Citizen Petition on Benzene in Body Spray Products* (November 3, 2021), https://www.valisure.com/wp-content/uploads/Valisure-FDA-Citizen-Petition-on-Body-Spray-v4.0-1.pdf (last visited November 19, 2021).
[8] *Id.*
[9] *Id.*
[10] *Ingredient choices and how we make them*, https://us.pg.com/ingredients/ (last visited November 19, 2021).

3

10. Accordingly, Plaintiffs bring this action on behalf of themselves and the Class for equitable relief and to recover damages and restitution for: (i) breach of express warranty; (ii) violations of the Missouri Merchandising Practices Act, Mo. Rev. Stat. §§ 407 *et seq.*; (iii) violations of the Vermont Consumer Fraud Act, Vt. Stat. Ann. Tit. 9, § 2451 *et seq.*; and (iv) unjust enrichment.

## PARTIES

11. Plaintiff Tyler Baker is a resident and citizen of the state of Vermont. Between 2016 and March 2020, Mr. Baker purchased Old Spice spray-on antiperspirant approximately one time per month. Mr. Baker purchased the Affected Products from a Walmart retail store located in Williston, Vermont and a Hannaford Supermarket and Pharmacy retail store located in South Burlington, Vermont. When purchasing the Affected Products, Mr. Baker reviewed the accompanying labels and disclosures, and understood them as representations and warranties by Defendant that the products were properly manufactured, free from defects, and safe for their intended use. Mr. Baker relied on these representations and warranties in deciding to purchase the products and these representations and warranties were part of the basis of the bargain in that he would not have purchased the Affected Products from Defendant if he had known that they were not, in fact, properly manufactured, free from defects, or safe for their intended use.

12. Plaintiff Brian Stanfield is a resident and citizen of the state of Missouri. Between 2018 and September 2021, Mr. Stanfield purchased approximately one can of Old Spice spray-on antiperspirant every six weeks. Mr. Stanfield also purchased approximately two cans of Secret spray-on antiperspirant within the past year. Mr. Stanfield purchased the Affected Products from Walmart retail stores located in Washington, Missouri, Eureka, Missouri, and Union, Missouri, and a Target retail store located in Washington, Missouri. When purchasing the Affected Products, Mr. Stanfield reviewed the accompanying labels and disclosures, and understood them as

representations and warranties by Defendant that the products were properly manufactured, free from defects, and safe for their intended use. Mr. Stanfield relied on these representations and warranties in deciding to purchase the products and these representations and warranties were part of the basis of the bargain in that he would not have purchased the Affected Products from Defendant if he had known that they were not, in fact, properly manufactured, free from defects, or safe for their intended use.

13.     Defendant P&G is an Ohio corporation with its principal place of business and headquarters located at One Procter & Gamble Plaza in Cincinnati, Ohio.  At all relevant times hereto, Defendant was engaged in manufacturing, marketing, distributing, and advertising the Affected Products throughout the United States. Defendant created and/or authorized the false and misleading advertising and labeling of the Affected Products.

## JURISDICTION AND VENUE

14.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because there are more than 100 Class members; the aggregate amount in controversy exceeds $5,000,000.00, exclusive of interest, fees, and costs; and at least one Class member is a citizen of a state different from the Defendant.

15.     This Court has personal jurisdiction over Defendant because Defendant is headquartered in this State and regularly sells and markets its product in this State. Defendant derives substantial revenue from sales of its products in this State, with knowledge that its products are being marketed and sold for use in this State.

16.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Defendant is headquartered here and conducts substantial business in this District.

## FACTUAL ALLEGATIONS

A.    **The Dangers of Benzene**

17.    According to the U.S. Centers for Disease Control and Prevention ("CDC"), the U.S. Department of Health and Human Services has determined that benzene causes cancer in humans. Similarly, the WHO and the IARC have classified benzene as a Group 1 compound thereby defining it as "carcinogenic to humans."[11]

18.    The NIOSH and CDC identify "exposure routes" for benzene to include: "inhalation, skin absorption, ingestion, skin and/or eye contact."[12]

19.    The NIOSH and CDC identify "target organs" associated with human exposure to benzene to include: "eyes, skin, respiratory system, blood, central nervous system, bone marrow.[13]

20.    The CDC warns that "[b]enzene works by causing cells not to work correctly. For example, it can cause bone marrow not to produce enough red blood cells, which can lead to anemia. Also, it can damage the immune system by changing blood levels of antibodies and causing the loss of white blood cells."[14]

21.    As for "where benzene is found and how it is used," the CDC states that "[s]ome industries use benzene to make other chemicals that are used to make plastics, resins, and nylon and synthetic fibers. Benzene is also used to make some types of lubricants, rubbers, dyes, detergents, drugs, and pesticides."[15]

22.    The CDC has stated that ways in which people "could be exposed to benzene" include:

---

[11] David Light, Kaury Kucera, PhD, and Quian Wu, PhD, *Valisure Citizen Petition on Benzene in Body Spray Products* (November 3, 2021), https://www.valisure.com/wp-content/uploads/Valisure-FDA-Citizen-Petition-on-Body-Spray-v4.0-1.pdf (last visited November 19, 2021).

[12] *NIOSH Pocket Guide to Chemical Hazards: Benzene*, CENTERS FOR DISEASE CONTROL AND PREVENTION, https://www.cdc.gov/niosh/npg/npgd0049.html (last visited November 19, 2021).

[13] *Id.*

[14] *Facts About Benzene,* CENTERS FOR DISEASE CONTROL AND PREVENTION (April 4, 2018) https://emergency.cdc.gov/agent/benzene/basics/facts.asp (last visited November 19, 2021).

[15] *Id.*

- Outdoor air contains low levels of benzene from tobacco smoke, gas stations, motor vehicle exhaust, and industrial emissions.

- Indoor air generally contains levels of benzene higher than those in outdoor air. The benzene in indoor air comes from products that contain benzene such as glues, paints, furniture wax, and detergents.

- The air around hazardous waste sites or gas stations can contain higher levels of benzene than in other areas.

- Benzene leaks from underground storage tanks or from hazardous waste sites containing benzene can contaminate well water.

- People working in industries that make or use benzene may be exposed to the highest levels of it.

- A major source of benzene exposure is tobacco smoke.[16]

23.     A 2010 study titled "Advances in Understanding Benzene Health Effects and Susceptibility" summarized the epidemiological studies of the carcinogenic effects of benzene exposure and an overview of the hematotoxic effects of benzene.[17]  The 2010 study concluded:

a. There is probably no safe level of exposure to benzene, and all exposures constitute some risk in a linear, if not supralinear, and additive fashion.

b. Exposure to benzene can lead to multiple alterations that contribute to the leukemogenic process, indicating a multimodal mechanism of action.

c. Benzene is a ubiquitous chemical in our environment that causes acute leukemia and probably other hematological cancers.

---

[16] *Id.*
[17] Martyn T. Smith, *Advances in Understanding Benzene Health Effects and Susceptibility*, ANNUAL REVIEWS, Vol. 31:133-148 (April 21, 2010) https://www.annualreviews.org/doi/full/10.1146/annurev.publhealth.012809.103646 (last visited November 19, 2021).

24. The FDA currently recognizes the danger of benzene and, as a result, has claimed it should not be used in the manufacture of any component of a drug product due to its unacceptable toxicity effect.[18]

25. Where the use of benzene or other Class 1 solvents is *unavoidable*, the FDA has stated that the levels should be restricted, and benzene is restricted under such guidance to 2 parts per million ("ppm").[19]

26. Because many of the products Valisure tested did not contain detectable levels of benzene, it does not appear that benzene use is unavoidable for their manufacture.[20] As such, "[a]ny significant detection of benzene should be deemed unacceptable."[21]

27. The FDA regulates antiperspirants to ensure that they meet safety and effectiveness standards. *See* 21 CFR §§ 350.1. The FDA has also identified acceptable active ingredients for products labeled as antiperspirant.[22] Benzene is not one of those acceptable ingredients.[23]

28. As such, the presence of this known human carcinogen in body spray products widely used makes the presence of benzene in body spray products especially troubling.

**B.     The Valisure Lab Report Identified High Levels of Benzene In Defendant's Products**

29. Valisure analyzed 108 unique batches from 30 brands of deodorant and antiperspirant aerosol products.

---

[18] David Light, Kaury Kucera, PhD, and Quian Wu, PhD, *Valisure Citizen Petition on Benzene in Body Spray Products* (November 3, 2021), https://www.valisure.com/wp-content/uploads/Valisure-FDA-Citizen-Petition-on-Body-Spray-v4.0-1.pdf (last visited November 19, 2021).
[19] *Id.*
[20] David Light, Kaury Kucera, PhD, and Quian Wu, PhD, *Valisure Citizen Petition on Benzene in Body Spray Products* (November 3, 2021), https://www.valisure.com/wp-content/uploads/Valisure-FDA-Citizen-Petition-on-Body-Spray-v4.0-1.pdf (last visited November 19, 2021).
[21] *Id.*
[22] 21 CFR § 350.10.
[23] *Id.*

30. Valisure identified twenty-four body spray products or product line batches which contained levels of benzene at 2 ppm or higher. Sixteen of the twenty-four batches are manufactured by P&G:

| Brand | UPC | Lot | Expiration | Type | Description | API | Percent API | Average ppm | % St Dev |
|-------|-----|-----|------------|------|-------------|-----|-------------|-------------|----------|
| Old Spice | 012044001912 | 11671458SQ | 06/2023 | Antiperspirant | Pure Sport | Aluminum Chlorohydrate (Anhydrous) | 23 | 17.7 | 12% |
| Old Spice | 012044001912 | 11671458SB | 06/2023 | Antiperspirant | Pure Sport | Aluminum Chlorohydrate (Anhydrous) | 23 | 17.4 14.1* | 8% |
| Secret | 037000711087 | 11721458SG | 06/2023 | Antiperspirant | Powder Fresh, 24 HR Aerosol | Aluminum Chlorohydrate (Anhydrous) | 24 | 16.2 13.1* | 17% |
| Secret | 037000711087 | 11701458SH | 06/2023 | Antiperspirant | Powder Fresh, 24 HR Aerosol | Aluminum Chlorohydrate (Anhydrous) | 24 | 16.1 | 16% |
| Tag | 850007395421 | M 21075 | Unknown | Deodorant | Midnight, Fine Fragrance Body Spray, Long Lasting Scent | N/A (Cosmetic Product) | N/A | 14.1 | 28% |
| Secret | 037000711094 | 12181458SD | 08/2023 | Antiperspirant | Powder Fresh, 24 HR Aerosol | Aluminum Chlorohydrate (Anhydrous) | 24 | 12.5 | 12% |
| Sure | 883484002278 | (L)21175 | 05/2023 | Antiperspirant | Lasts All Day, Unscented, Aerosol | Aluminum Chlorohydrate (Anhydrous) | 10 | 11.1 6.41* | 14% |
| Equate | 681131346443 | 1E05 | 05/2023 | Antiperspirant | Dry Spray, Cucumber | Aluminum Chlorohydrate | 20.2 | 6.15 3.21* | 5% |
| Old Spice | 037000695707 | 246144504 | Unknown | Deodorant | Below Deck, Powder Spray, Feel Drier & Cleaner, Down Below, Fresh Air | N/A (Cosmetic Product) | N/A | 5.22 6.52* | 3% |
| Suave | 079400751508 | 07151AD14 | 07/2023 | Antiperspirant | 24 Hour Protection, Powder, Aerosol | Aluminum Chlorohydrate | 19.1 | 5.21 | 4% |

| Right Guard | 017000068060 | Q405410200 | Unknown | Antiperspirant | Sport, Fresh, Up To 48 HR Odor Protection | Aluminum Chlorohydrate | 20 | 5.00 5.07* | 10% |
| Secret | 037000798842 | 11091458SN | 04/2023 | Antiperspirant | Cool Light & Airy Smooth Feel, Dry Spray, 48 Hour Freshness, Rose | Aluminum Chlorohydrate (Anhydrous) | 23.5 | 4.85 | 6% |
| Old Spice | 037000730347 | 11001458SC | 04/2023 | Antiperspirant | Sweat Defense, Stronger Swagger, Dry Spray, Sweat & Odor Protection | Aluminum Chlorohydrate | 23.5 | 4.54 | 24% |
| Brut | 827755070108 | (L)21155 | 05/2023 | Antiperspirant | Classic, 24 Hr Protection | Aluminum Chlorohydrate | 20.9 | 4.13 | 7% |
| Sure | 883484002278 | 21172 | 05/2023 | Antiperspirant | Lasts All Day, Unscented, Aerosol | Aluminum Chlorohydrate (Anhydrous) | 10 | 3.59 | 35% |
| Old Spice | 012044001912 | 12631458SB | 09/2023 | Antiperspirant | Pure Sport | Aluminum Chlorohydrate (Anhydrous) | 23 | 3.34 | 16% |
| Right Guard | 017000068060 | Q610900732 | Unknown | Antiperspirant | Sport, Fresh, Up To 48 HR Odor Protection | Aluminum Chlorohydrate | 20 | 2.61 | 16% |
| Secret | 037000798842 | 11991458SR | 07/2023 | Antiperspirant | Cool Light & Airy Smooth Feel, Dry Spray, 48 Hour Freshness, Rose | Aluminum Chlorohydrate (Anhydrous) | 23.5 | 2.58 | 20% |
| Tag | 854152008786 | 0252020203 | Unknown | Deodorant | Sport, Fearless, Fine Fragrance Body Spray, Long Lasting Scent | N/A (Cosmetic Product) | N/A | 2.53 | 46% |
| Sure | 883484002278 | (L)21099 | 03/2023 | Antiperspirant | Lasts All Day, Unscented, Aerosol | Aluminum Chlorohydrate (Anhydrous) | 10 | 2.36 | 9% |
| Brut | 827755070085 | (L)21167 | 05/2023 | Antiperspirant | Classic, 24 Hr Protection | Aluminum Chlorohydrate | 20.9 | 2.34 2.47* | 4% |
| Tag | 854152008762 | 0252035602 | Unknown | Deodorant | Sport, Dominate, Fine Fragrance Body Spray, Long Lasting Scent | N/A (Cosmetic Product) | N/A | 2.30 | 36% |
| Suave | 079400785503 | 08091AD00 | 08/2023 | Antiperspirant | 24 Hour Protection, Fresh, Aerosol | Aluminum Chlorohydrate | 19.1 | 2.30 2.11* | 9% |
| Suave | 079400785503 | 08091AD02 | 08/2023 | Antiperspirant | 24 Hour Protection, Fresh, Aerosol | Aluminum Chlorohydrate | 19.1 | 2.24 | 6% |

31.    In fact, Defendant's products had the highest levels of benzene detected in any of the body spray products tested by Valisure.

32.    The *lowest* level of benzene found in the P&G products listed in the chart above is 2.30 ppm (Tag Sport, Dominate, Fine Fragrance Body Spray), or 15% higher than the 2 ppm concentration limit for "unavoidable" uses.

33.    The *highest* level of benzene found in the P&G products listed in the chart above is 17.7 ppm (Old Spice Pure Sport Aerosol Antiperspirant), or more than 8 times the concentration limit for "unavoidable" uses.

34.    The presence of benzene in the Affected Products is not disclosed on the Affected Products' labels.  Therefore, Plaintiffs, by use of reasonable care, could not have discovered that the Affected Products were contaminated with Benzene.

35.     By marketing and selling its body spray products in the stream of commerce with the intent that its Affected Products would be purchased by Plaintiffs and the Classes, Defendant warrants that the Affected Products are safe to use rather than adulterated body sprays containing a dangerous, cancer-causing chemical.

**C.     Defendant's False and Misleading Advertising Campaign**

36.     Benzene is not listed on the Affected Product labels as either an active or inactive ingredient, nor is there any warning about the inclusion (or even potential inclusion) of benzene in the Affected Products.

37.     Rather, Defendant has long represented that "[s]afety is at the heart of everything [they] do."[24]  Before a new product is marketed, Defendant claims to "go beyond regulatory compliance to ensure every ingredient's safety through a four-step, science-based process." Defendant further claims to "use the same process as regulatory agencies around the world, like US FDA, EPA, the Eu, the WHO, and others."[25]

38.     In fact, P&G expressly warrants that that benzene is a material "we do not use as [an] ingredient[] in any of our formulated products (health care, skin and personal cleansing, hair care, laundry, home care, and oral care)[.]"[26]

---

[24] *Product Safety*, https://us.pg.com/product-safety/ (last visited November 6, 2021); *see also General Product Information*, https://oldspice.com/faq (last visited November 19, 2021).
[25] *Id.*
[26] *Ingredient choices and how we make them*, https://us.pg.com/ingredients/ (last visited November 19, 2021).



## Ingredients we do not use

Here is a list of some of the most common materials we get asked about that we do not use as ingredients in any of our formulated products (health care, skin and personal cleansing, hair care, laundry, home care, and oral care):

- Alkylphenols and alkylphenol ethoxylates
- Benzene
- Bisphenol A (not in formulas*)
- Heavy metals: Arsenic, Lead, Chromium VI, Mercury, Cadmium, Nickel
- Microbeads

- Organotins (TBT, DBT, MBT, DOT)
- PVC (not in formulas*)
- PAHs (Polycyclic aromatic hydrocarbons)
- PCBs (Polychlorinated biphenyls)
- Phthalates**
- Triclosan
- Triclocarban**

This list is not exhaustive but a starting point. For specific product ingredients, please see the Brand website **here**.

39.     As such, Defendant's advertising campaign is false and misleading.  The presence of benzene in the Affected Products renders the Affected Products illegal and unfit for sale in trade or commerce.  Plaintiffs would not have purchased the Affected Products had they been truthfully and accurately labeled.

## CLASS ACTION ALLEGATIONS

40.     Plaintiffs bring this action pursuant to Rule 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure, individually and on behalf of the following Classes:

> All persons who purchased one or more of Defendant's Affected Products in the United States for personal/household use within any applicable limitations period (the "Nationwide Class").

41.     Plaintiff Stanfield brings this action individually and on behalf of the following Missouri subclass:

> All persons who purchased one or more of Defendant's Affected Products in the

state of Missouri for personal/household use within any applicable limitations (the "Missouri Subclass").

42.     Plaintiff Baker brings this action individually and on behalf of the following Vermont subclass:

All persons who purchased one or more of Defendant's Affected Products in the state of Vermont for personal/household use within any applicable limitations (the "Vermont Subclass").

43.     Excluded from the Class and Subclass are: (1) any Judge or Magistrate presiding over this action and any members of their families; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entities in which Defendant or its parents and any entities in which Defendant has a controlling interest and its current or former employees, officers, and directors; and (3) individuals who allege personal bodily injury resulting from the use of Affected Products.

44.     Numerosity (Rule 23(a)(1)): The exact number of members of the Class is unknown and currently unavailable to Plaintiffs, but joinder of individual members herein is impractical. The Class is likely comprised of thousands of consumers. The precise number of Class members, and their addresses, is unknown to Plaintiffs at this time, but can be ascertained from Defendant's records and/or retailer records. The members of the Class may be notified of the pendency of this action by mail or email, Internet postings and/or publications, and supplemented (if deemed necessary or appropriate by the Court) by published notice.

45.     Predominant Common Questions (Rule 23(a)(2) and (b)(3)): The Class's claims present common questions of law and fact, and those questions predominate over any questions that may affect individual Class members. The common and legal questions include, but are not limited to, the following:

a.   Whether the Affected Products contain benzene;

b. Whether Defendant knew or should have known that the Affected Products contain benzene;

c. Whether Defendant's representations and omissions, in its marketing, advertising, labeling, and packaging of the Affected Products, are misleading;

d. Whether Defendant's representations and omissions, in its marketing, advertising, labeling, and packaging of the Affected Products are reasonably likely to deceive;

e. Whether Defendant engaged in false and misleading advertising;

f. Whether Defendant had knowledge that those representations were false, deceptive, and/or misleading;

g. Whether Defendant's internal testing showed that its products contained benzene;

h. Whether Defendant violated the state consumer protection statutes alleged herein;

i. Whether Defendant breached its express warranties;

j. Whether Defendant was unjustly enriched;

k. Whether Defendant has the capability to implement changes to processes, practices, and policies regarding testing its products for contaminants, including, but not limited to benzene; and

l. The nature of relief, including damages and equitable relief, to which Plaintiffs and members of the Class are entitled.

46. Typicality of Claims (Rule 23(a)(3)): Plaintiffs' claims are typical of the claims of the Class because Plaintiffs, like all other Class Members, purchased the Affected Products,

suffered damages as a result of that purchase, and seek the same relief as the proposed Class Members.

47.     Adequacy of Representation (Rule 23(a)(4)): Plaintiffs adequately represent the Class because their interests do not conflict with the interests of the members of the Class, and they have retained counsel competent and experienced in complex class action and consumer litigation. Plaintiffs and their counsel will fairly and adequately protect the interest of the members of the Class.

48.     Superiority (Rule 23(b)(3)): A class action is superior to other available means of adjudication for this controversy. It would be impracticable for members of the Class to individually litigate their own claims against Defendant because the damages suffered by Plaintiffs and the members of the Class are relatively small compared to the cost of individually litigating their claims. Individual litigation would create the potential for inconsistent judgments and delay and expenses to the court system. A class action provides an efficient means for adjudication with fewer management difficulties and comprehensive supervision by a single court.

49.     Declaratory Relief (Fed. R. Civ. P. 23(b)(1) and (2)): In the alternative, this action may properly be maintained as a class action because the prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudication with respect to individual Class members, which would establish incompatible standards of conduct for the Defendant; or the prosecution of separate actions by individual Class members would create a risk of adjudications with respect to individual members of the Class which would, as a practical matter, be dispositive of the interests of other members of the Class not parties to the adjudications, or substantially impair or impede their ability to protect their interests; or Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive or corresponding declaratory relief with respect to the Class as a whole.

## CAUSES OF ACTION

## COUNT I

**BREACH OF EXPRESS WARRANTY**
**(On behalf of Plaintiffs and the Class (or alternatively, the Subclasses) against Defendant)**

50.     Plaintiffs hereby incorporate all other paragraphs of this Complaint and restate them as if fully set forth herein.

51.     Defendant marketed and sold its body spray products in the stream of commerce with the intent that its Affected Products would be purchased by Plaintiffs and the Classes.

52.     In connection with the sale of the Affected Products, Defendant, as the designer, manufacturer, marketer, distributor, and/or seller issued written warranties by representing that the Affected Products were body sprays that contained only those active and inactive ingredients listed on the Products' labels. Those active and inactive ingredients do not include benzene, a known human carcinogen. Defendant further expressly warrants that the Affected Products are body spray antiperspirant and deodorant products, rather than adulterated body sprays containing dangerous chemicals.

53.     Defendant also expressly warrants that benzene is not used in any of its formulated products.

54.     The representations, as set forth above, contained, or constituted affirmations of fact or promises made by the seller to the buyer which related to the goods and became part of the basis of the bargain creating an express warranty that the goods shall conform to the affirmations of fact or promises.

55.     Plaintiffs, by use of reasonable care, could not have discovered the breached warranty and realized the hidden increased risks and unreasonable dangers of using the Affected Products.

56. As a direct and proximate cause of Defendant's breach of express warranty, Plaintiffs and the Class members have been injured and harmed because they would not have purchased the products had they known the true facts regarding the benzene content.

57. On November 10, 2021, prior to filing this action, Defendant was served with a pre-suit notice letter pursuant to U.C.C. §§ 2-313 and 2-607.

## COUNT II

### VIOLATIONS OF MISSOURI MERCHANDISING PRACTICES ACT
### Mo. Rev. Stat. §§ 407 *et seq.*
### (on Behalf of the Missouri Subclass against Defendant)

58. Plaintiff Stanfield hereby incorporates all other paragraphs of this Complaint and restates them as if fully set forth herein.

59. Plaintiff Stanfield and the Missouri Subclass members are residents of the State of Missouri.

60. At all times mentioned herein, Defendant engaged in "trade" or "commerce" in Missouri, as defined by Mo. Rev. Stat. § 407.010(7), in that it advertised, offered for sale, and sold provided goods, property, or services primarily for personal, family, or household purposes, and advertised, solicited, offered for sale, and sold "services", "property", "article[s]", "commodit[ies]" or "thing[s] of value" in Missouri.

61. Plaintiff Stanfield and the Missouri Subclass members purchased the Affected Products "primarily for personal, family or household purposes." Mo. Rev. Stat. § 407.025(1).

62. The Missouri Merchandising Practices Act ("MMPA"), Mo. Rev. Stat. § 407.020 provides that "[t]he act, use or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise in trade or commerce…in the state of Missouri, is declared to be an unlawful practice."

63.     For the reasons discussed herein, Defendant violated and continues to violate the MMPA by engaging in the herein described unconscionable, deceptive, unfair acts or practices proscribed by Mo. Rev. Stat. § 407.020 et *seq*. Defendant's acts and practices, including its material omissions, described herein, were likely to, and did in fact, deceive and mislead members of the public, including consumers acting reasonably under the circumstances, to their detriment.

64.     Defendant's representations and omissions were material because they were likely to deceive reasonable consumers to induce them to purchase the Affected Products without being aware that the products contain benzene, a known human carcinogen, and are unsafe for use. These material facts should have been disclosed because they were contrary to Defendant's representations about the Affected Products.

65.     As a direct and proximate result of Defendant's unfair and deceptive acts or practices, Plaintiff Stanfield and the Missouri Subclass members suffered damages by purchasing the Affected Products because they would not have purchased the products had they known the truth.

66.     Defendant's deceptive trade practices caused injury in fact and actual damages to Plaintiff Stanfield and the Missouri Subclass members in the form of the loss or diminishment of value of the Affected products Plaintiff Stanfield and the Missouri Subclass members purchased, which allowed Defendant to profit at the expense of Plaintiff Stanfield and the Missouri Subclass members. The injuries Plaintiff Stanfield and the Missouri Subclass members were to legally protected interests. The gravity of the harm of Defendant's actions is significant and there is no corresponding benefit to consumers of such conduct.

67.     Plaintiff Stanfield and the Missouri Subclass Members seek relief for the injuries they have suffered as a result of Defendant's unfair and deceptive acts and practices, as provided by Mo. Rev. Stat. § 407.025 and applicable law.

## COUNT III

### VIOLATIONS OF VERMONT CONSUMER FRAUD ACT
**VT. Stat. Ann. Tit. 9, § 2451 et seq.**
**(On behalf of Plaintiff Baker and the Vermont Subclass against Defendant)**

68.     Plaintiff Baker hereby incorporates all other paragraphs of this Complaint and restates them as if fully set forth herein.

69.     Plaintiff Baker brings this count on behalf of himself and all members of the Class that purchased an Affected Product in Vermont

70.     Plaintiff Baker and Vermont Subclass members are "consumers," as defined by VT. Stat. Ann. Tit. 9, § 2451a(a).

71.     Defendant's conduct as alleged herein related to "goods" or "services" for personal, family, or household purposes, as defined by VT. Stat. Ann. Tit. 9, § 2451a(b).

72.     Defendant is a "seller," as defined by VT. Stat. Ann. Tit. 9, § 2451a(c).

73.     Defendant advertised, offered, or sold goods or services in Vermont and engaged in trade or commerce directly or indirectly affecting the people of Vermont.

74.     Defendant engaged in unfair and deceptive acts or practices, in violation of VT. Stat. Tit. 9, § 2453(a), as described herein.

75.     Defendant intended to mislead Plaintiff Baker and Vermont Subclass members and induce them to rely on its misrepresentations and omissions.

76.     Defendant's representations and omissions were material because they were likely to deceive reasonable consumers.

77.     Under the circumstances, consumers had a reasonable interpretation of Defendant's representations and omissions.

78.     Defendant had a duty to disclose material facts to consumers, including but not limited to, that the Affected Products contain benzene, a known human carcinogen, and are unsafe

for use. These material facts should have been disclosed because they were contrary to Defendant's representations about the Affected Products.

79.     Defendant's acts and practices caused or were likely to cause substantial injury to consumers, which was not reasonably avoidable by consumers themselves and not outweighed by countervailing benefits to consumers or to competition.

80.     The injury to consumers was and is substantial because it was non-trivial and nonspeculative; and involved a concrete monetary injury. The injury to consumers was substantial not only because it inflicted harm on a significant and unprecedented number of consumers, but also because it inflicted a significant amount of harm on each consumer.

81.     Consumers could not have reasonably avoided injury because Defendant's business acts and practices unreasonably created or took advantage of an obstacle to the free exercise of consumer decision-making. By withholding important information from consumers, Defendant created an asymmetry of information between it and consumers that precluded consumers from taking action to avoid or mitigate injury.

82.     Defendant's business practices had no countervailing benefit to consumers or to competition.

83.     Defendant is presumed, as a matter of law under VT. Stat. Ann. Tit. 9, § 2457, to have intentionally violated the Vermont Consumer Protection Act because it failed to sell goods or services in the manner and of the nature advertised or offered.

84.     Defendant acted intentionally, knowingly, and maliciously to violate Vermont's Consumer Fraud Act, and recklessly disregarded Plaintiffs' and Vermont Subclass members' rights.

85.     As a direct and proximate cause of Defendant's deceptive acts and practices, Plaintiff Baker and the Vermont Subclass members have been injured and harmed because they

would not have purchased the Affected Products on the same terms if they knew the true facts regarding the benzene content.

## COUNT IV

### UNJUST ENRICHMENT
**(On behalf of the Plaintiffs and the Class (or alternatively, the Subclasses) against Defendant)**

86.     Plaintiffs hereby incorporate all other paragraphs of this Complaint and restate them as if fully set forth herein.

87.     Plaintiffs and Class members conferred benefits upon Defendant. Plaintiffs and Class members paid money for Defendant's worthless and defective Affected Products.

88.     Defendant has unjustly retained the benefits conferred upon by Plaintiffs and Class members.

89.     Defendant retained those benefits under circumstances that make it inequitable for Defendant to retain such benefits. Specifically, Defendant retained those benefits even though Defendant's Affected Products contain benzene and are unfit and unsafe for human use. If Plaintiffs and Class members had known the true nature of Defendant's Affected Products, they would not have purchased the products. Plaintiffs and Class members are therefore entitled to disgorgement and/or restitution as prayed for hereunder.

90.     Because Defendant's retention of the non-gratuitous benefits conferred on it by Plaintiffs and members of the Class is unjust and inequitable, Defendant must pay restitution to Plaintiffs and members of the Class for its unjust enrichment, as ordered by the Court.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, on behalf of themselves and the proposed Classes, pray for relief and judgment against Defendant as follows:

a. Certifying the Classes pursuant to Rule 23 of the Federal Rules of Civil Procedure, appointing Plaintiffs as representatives of the Class, and designating Plaintiffs' counsel as Class Counsel;

b. Awarding Plaintiffs and the Classes compensatory damages, in an amount exceeding $5,000,000, to be determined by proof;

c. Awarding Plaintiffs and the Classes appropriate relief, including but not limited to actual damages;

d. For declaratory and equitable relief, including restitution and disgorgement;

e. For an order enjoining Defendant from continuing to engage in the wrongful acts and practices alleged herein;

f. Awarding Plaintiffs and the Classes the costs of prosecuting this action, including expert witness fees;

g. Awarding Plaintiffs and the Classes reasonable attorneys' fees and costs as allowable by law;

h. Awarding pre-judgment and post-judgment interest;

i. For punitive damages; and

j. Granting any other relief as this Court may deem just and proper.


## JURY TRIAL DEMANDED

Plaintiffs hereby demand a trial by jury of all claims so triable.

Dated: November 23, 2021                Respectfully submitted,

/s/ Joseph J. Braun

Joseph J. Braun
Richard S. Wayne
**STRAUSS TROY**
150 E. 4th Street, 4th Floor
Cincinnati, Ohio 45202
Telephone: 513-621-2120
Facsimile: 513-241-8259
Email: jjbraun@strausstroy.com
        rswayne@strausstroy.com

**LEVI & KORSINSKY, LLP**
Mark S. Reich (*pro hac vice* to be filed)
Courtney E. Maccarone (*pro hac vice* to be filed)
55 Broadway, 10th Floor
New York, NY 10006
Telephone: 212-363-7500
Facsimile: 212-363-7171
Email: mreich@zlk.com
        cmaccarone@zlk.com

*Counsel for Plaintiffs*